UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LATONYA MEAKENS,** ) | Case No. 1:11-CV-1280 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **MICHAEL BENZ,** ) | |
| ) | |
| Defendant. ) | |

Only one defendant remains in this § 1983 case, Detective Michael Benz of the Cleveland Police Department, all others having been dismissed by Plaintiff Latonya Meakens. (See Docs. ## 12, 37). Now before the Court is Defendant Benz's Motion for Summary Judgment (**Doc. # 35**). Defendant seeks a dismissal of all claims.

I.

Shortly before 9 a.m. on February 18, 2011, Duane Chisholm, Meakens's estranged husband, called 911 to report that she had fired a gun at him. The incident occurred near 71st Street and Superior Avenue in Cleveland, Ohio. Police officers responded to the call, took a statement from Chisholm, and wrote a report. They gave the report to Detective Benz, who was assigned to investigate.

After reviewing the police report, Benz spoke with Chisholm by phone and obtained a sworn statement from him on February 25. In the sworn statement, Chisholm gave the following details about the incident:

> I was walking toward the library and a car pulled up next to me and the window came down on the passenger [s]ide and I saw that it was my wife Latonya. She said "you ain[']t going to leave me up here by myself while [y]ou're fucking with another bitch, then she raised up a gun at me.["]  I ducked and weaved and then took off running and that's when I heard the shot come from the car.

(Doc. # 39-6). Chisholm described the car as a white four-door and the gun as a black 9-mm. When asked what prompted the incident, Chisholm answered:

> A week before this incident I decided to leave because she was giving me a hard time about not working....We talked for a minute but then she got pissed when she seen me leave and get into a car with another women, and that's how all this got started.

(Id.).

Benz spoke about the incident with one of responding officers, Officer Joseph Escano. (Doc. # 34-3 at 39:8–21). According to Escano, only moments before Chisholm's 911 call, he and his partner, Officer Maliszewski, who were patrolling the area together, heard gunshots fired "right around the corner." (Doc. # 34-2 at 15:1–25).

On February 28, Benz presented the case to the prosecutor. After conferring with Benz, the prosecutor decided to seek an arrest warrant for Meakens. A judge issued a warrant, and Meakens was arrested on March 1.

The following day, Benz went to the jail to take Meakens's statement. Meakens denied all the allegations. She rejected her husband's story completely and claimed she had been out of town the day of the incident. After speaking with Meakens, Benz followed up with Chisholm and questioned him further. Benz "just wanted to make sure, you know, [Chisholm's] sticking to his story, everything is the way he said it happened." (Doc. # 34-3 at 117:24–118:1). Chisholm reassured him: "[H]e said he was...100 percent on board with the case and that...what he stated is the truth." (Doc. # 34-3 at 118:1–3). Benz: "I just was trying to cover all the bases as far as going forward with charging [Meakens]." (Id. at 118:4–6).

Benz submitted the information to a grand jury, and, on March 8, the grand jury indicted Meakens on a number of charges, including attempted murder and felonious assault with gun specifications. The charges were dropped soon thereafter, however. Benz had received a phone message from Chisholm: he said he was leaving the state out of fear for his safety. Benz, realizing Chisholm would be unavailable to aid the prosecution, relayed the information to the prosecutor, who had the charges dismissed on March 14.

Meakens subsequently brought this action, pursuant to 42 U.S.C. § 1983 and Ohio state law, against Benz "for causing her to be arrested without probable cause, and thereafter failing to obtain her release." (Doc. # 39 at 6). Defendant alleges four claims: federal claims of unreasonable seizure and malicious prosecution; and state-law claims of false arrest and malicious prosecution.

II.

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must examine the evidence and draw all reasonable inferences in favor of the nonmoving party. Jones v. Potter, 488 F.3d 397, 402–03 (6th Cir. 2007). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A. Federal Claim of Unreasonable Seizure

Meakens alleges that Benz violated her Fourth-Amendment right—applicable to the states through the Fourteenth Amendment to the U.S. Constitution—to be free from unreasonable seizures. She claims that he caused her to be arrested without probable cause.

It is a true and "well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." Ingram v. City of Columbus, 185 F.3d 579, 592–93 (6th Cir. 1999). However, an arrest based on a facially valid warrant approved by a magistrate provides a complete defense to an unlawful arrest claim. Sykes v. Anderson, 625 F.3d 294, 305. This is because the officer's determination is ratified by the prosecutor's decision to seek an arrest warrant and a neutral and detached magistrate's decision to issue the warrant. Ahlers v. Schebil, 188 F.3d 365, 373 (6th

-3-

Cir. 1999). Accordingly, in order to prevail on a false-arrest claim Meakens must allege and prove that Benz, either "knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." Sykes, 625 F.3d at 305 (internal quotations and citations omitted).

Meakens does not allege Benz lied. Instead, she claims Benz acted with reckless disregard for the truth. (Doc. # 39 at 17). Yet her claim is not that Benz, acting with reckless disregard for the truth, made false or misleading statements or otherwise made omissions that created a falsehood. Cf. Sykes, 625 F.3d at 306 (noting a triable issue where the police officer had introduced evidence showing he deliberately made false or plainly misleading statements and omitted material information from his warrant application in order to manufacture probable cause). Instead, her argument is that Benz acted with reckless disregard for the truth because he did not consider the possibility that Chisholm was lying. (See Id. at 17).

Reckless disregard for the truth, however, is a high standard. See Ahlers, 188 F.3d at 372 (noting that proof of negligence or innocent mistake is insufficient to establish liability for an officer requesting a warrant that allegedly led to a false arrest). An investigation's lack of thoroughness—such as a failure to gather evidence or interview witnesses—might, at best, support an inference of negligence, but it does not demonstrate the kind of knowing or intentional behavior that rises to the level of constitutional violation. Id. at 373–74. Likewise, failure to assess the reliability of an alleged victim does not rise to the level of a constitutional violation—it does not involve making false or misleading statements and does not involve making omissions (*i.e.*, excluding information) to create a falsehood.

For that reason alone Meakens has no claim under § 1983 for unreasonable seizure. Nonetheless, in an abundance of caution, the Court will address Meakens's arguments about probable cause.

       i. Probable Cause

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." Sykes, 625 F.3d at 306 (6th Cir. 2010) (internal citation and quotations omitted). The determination of whether an officer has probable cause to arrest a person must be based on the totality of the information known to the officer at the time of the arrest. Parson v. City of Pontiac, 533 F.3d 492, 501 (6th Cir. 2008).

Meakens makes several arguments about why Benz lacked probable cause. She points out that Benz knew Chisholm and Meakens were in a domestic dispute. Citing Radvansky v. City of Olmsted Falls, 395 F.3d 291(6th Cir. 2005), Meakens argues that an officer may not seek an arrest based solely on the accusation of a person known to be in dispute with the accused.

This argument suffers from two flaws. In the first place, Benz had more than Chisholm's accusation. He had a police report. He had the statement of the responding officers, who heard gunshots in the area moments before Chisholm made the 911 call. And he had numerous conversations with Chisholm, by phone and in person. In fact, Benz called Chisholm to the police station to confirm his story, answer questions, and sign a statement. Chisholm even agreed to testify against Meakens; he told Benz "he would do whatever is needed of him to follow through with this case." (Doc. # 35-1 at 8). This reassured Benz that Chisholm was sticking to his story, that he had not simply concocted a one-off tale.

Another flaw in Meakens's argument is that it does not account for the unique facts in Radvansky and the concerns those facts raise. In Radvansky, the police arrested a tenant for burglary of a house based solely on the allegations of his landlord, even though the police had prior knowledge of a dispute between the landlord and tenant and had reason to believe the tenant had the right to be in the house. The Sixth Circuit concluded that, "having received a report of questionable reliability, the police needed to investigate," and that, in the context of a domestic dispute, police officers have a duty to conduct some investigation into the credibility of a person's accusation before making a warrantless arrest. Radvansky, 395 F.3d at 305 (internal citations omitted). Otherwise, the concern is that police officers will make hasty,

unsubstantiated arrests with impunity.  Id.  In Radvansky, the officers arrived at the scene of the alleged crime, spoke with the landlord, and arrested the tenant on the spot without a warrant and without conducting any follow-up investigation.

Here, by contrast, Benz did conduct an investigation.  His investigation revealed independent corroboration of the shooting from two officers, a serious act of violence, and an alibi that did not hold up.[1]  Critically, unlike the arrest of the tenant in Radvansky, the arrest of Meakens was not warrantless.  To the contrary, Benz went to the prosecutor with his information to seek a warrant, which he obtained.  Unlike the police in Radvansky, Benz did not make a hasty, unsubstantiated arrest.

What is more, even after the arrest, Benz continued to investigate.  As soon as Benz learned that the prosecution's key witness—Chisholm—would not be returning to Ohio, and so would be unable to testify against Meakens, Benz told the prosecutor and had the charges dropped.  Benz did not let Meakens sit in jail and rot but instead took prompt action to ensure her release.

Still, Meakens seeks to attack the thoroughness of Benz's investigation and the reliability of his evidence.  Meakens points to facts known to Benz before the arrest—facts that undermine Chisholm's credibility.  For example, "Benz knew there were no witnesses of any shooting, Chisholm had not been struck by a bullet, and none of the following were found: a shell, bullet slug or gun."  (Doc. # 39 at 12).[2]  Furthermore, according to Meakens, Benz's investigation

---

[1] Contrary to Meakens's assertions, Benz *did* investigate Meakens's alibi that she had been in Chicago at the time of the incident, but the alibi did not pan out.  Benz reviewed Meakens's supposedly exonerating evidence—a warning ticket and two ATM receipts—and found that the evidence was either inconclusive or consistent with her being in Cleveland at the time of incident.  (See Doc. # 34-2 at 105–06).  Moreover, Meakens gave him this information only *after* the arrest warrant was issued.  (Id. at 105:8–12).

[2] Meakens asserts that Benz disregarded Chisholm's bad criminal record.  Meakens claims that Benz, before seeking an arrest warrant, looked up the criminal records of Chisholm and Meakens and learned that Chisholm had an extensive criminal record while Meakens had no record.  The record before this Court, however, is not entirely clear, and tends to suggest that Benz learned about their records *after* seeking the arrest warrant.  (See Doc. # 35-1 at 7–8).

raised important new questions that he did not address. In light of the unreliability of Chisholm's accusation, Meakens insists, Benz should have questioned Meakens *before* seeking her arrest.

"A policeman, however is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." Gardenhire v. Schubert, 205 F.3d 303, 316 (6th Cir. 2000) (quoting Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988)). Indeed, "an officer does not have to investigate independently every claim of innocence." Gardenhire, 205 F.3d at 318. To hold otherwise would be to allow every suspect to avoid arrest simply by claiming "'it wasn't me.'" Id. at 316 (quoting Criss, 867 F.2d at 262). In any event, Benz *did* investigate Meakens's claim of innocence by reviewing her alibi, which, Benz determined, did not check out.

Meakens offers criticisms of the evidence Benz gathered; but these criticisms benefit from hindsight. With respect to probable cause, however, what matters is what Benz knew at the time of the arrest, not what 20/20 hindsight reveals. Radvansky, 395 F.3d at 302 quoting (Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)) ("A reviewing court must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"). An officer is not required to follow every possible lead, resolve every doubt, or answer every question his investigation raises. See Gardenhire, 205 F.3d at 318. All that is required is objectively reasonably information showing the accused committed the crime.

Benz did his duty. He investigated an allegation of a violent act, took the time to speak with the victim to confirm his story, and had independent corroboration from fellow officers. He then delivered his findings to the prosecutor, who sought and obtained an arrest warrant.

For these reasons, Meakens has no claim under § 1983 and Benz has no need for a qualified-immunity defense (even though he raises one).

B. Ohio-Law-False-Arrest Claim

The resolution of Meakens's false-imprisonment claim, brought under Ohio law, follows naturally. An arrest based on probable cause is a lawful detention and therefore defeats a false-imprisonment claim. Radvansky, 395 F.3d at 315. Accordingly, the fact that Benz had probable cause to arrest defeats Meakens's claim of false imprisonment.[3]

C. Malicious-Prosecution Claims

The absence of probable cause is a *sine qua non* of both malicious-prosecution claims. Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010) (observing that a malicious-prosecution claim brought under § 1983 requires the plaintiff to show that there was a lack of probable cause); Deoma v. Shaker Heights, 587 N.E.2d 425, 428 (Ohio Ct. App. 1990) (same for a malicious-prosecution claim under Ohio law). Indeed, Meakens admits in her opposition brief, "Lack of probable cause is the gravamen of all of Meakens' claims, state and federal." (Doc. # 39 at 8).

The Sixth Circuit has held that "'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006) (quoting Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002). A plaintiff who has been indicted pursuant to a determination made by a grand jury has no basis for a constitutional claim of malicious prosecution. Barnes, 449 F.3d at 716. Meakens does not allege—let alone produce evidence to show—that the indictment or the grand-jury proceeding was unfair. So the federal malicious-prosecution must fail.[4]

---

[3]Even if it were the case that Benz lacked probable cause, the false-arrest claim would be resolved by the state-law immunity provided by Ohio Revised Code § 2744.03(A)(6). Under that statute, a police officer is not liable unless it can be shown that he acted manifestly outside the scope of his employment, or official responsibilities, or acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Meakens does not offer any evidence that Benz acted with malice, in bad faith, or in a wanton or reckless manner.

[4]Barnes v. Wright also stands for the proposition that a grand-jury indictment defeats a false-arrest claim, but only if the arrest was made pursuant to the grand-jury indictment. Because Benz sought an arrest warrant *before* the grand jury convened, the indictment does not, by itself, resolve the unreasonable-seizure and false-arrest claims.

Similarly, under Ohio law, "[t]he return of an indictment by the grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause." Deoma, 587 N.E.2d at 428. To show lack of probable cause, the plaintiff must produce evidence showing that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were significantly irregular. Id.

Meakens does not allege that the indictment resulted from perjured testimony. And while she does argue that the grand-jury proceedings were irregular because "the grand jury...knew only what was in Chisholm's statements," (Doc. # 39 at 21), she offers no legal authority to support that argument. Moreover, under Deoma, the plaintiff must show that grand-jury proceeding were *significantly* irregular. Meakens does not allege or show any *significant* irregularity. Accordingly, the state-law claim fails too.

III.

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment (**Doc. # 35**).

**IT IS SO ORDERED.**

       */s/ Dan A. Polster 4/24/12*
       **Dan Aaron Polster**
       **United States District Judge**